Waln K. Brown, Petitioner *v.* Commonwealth of Pennsylvania, Unemployment Compensation Board of Review, Respondent.

Argued June 4, 1981, before Judges Mencer, Craig and MacPhail, sitting as a panel of three.

*L. C. Heim, Dell'Alba, Heim & Lecates,* for petitioner.

*John T. Kupchinsky,* Assistant Attorney General, with him *Richard Wagner,* Chief Counsel, and *LeRoy S. Zimmerman,* Attorney General, for respondent.

534

OPINION BY JUDGE MACPHAIL, July 15, 1981:

Waln Brown (Claimant) appeals from an order of the Unemployment Compensation Board of Review (Board) which affirmed the decision of a referee to deny unemployment compensation benefits to Claimant. The referee determined that remuneration received by Claimant in the form of a grant did not constitute "wages" for "employment" as those terms are defined in Sections 4(x) and 4(1)(2)(B) respectively of the Unemployment Compensation Law (Law), Act of December 5, 1936, Second Ex. Sess., P.L. (1937) 2897, as amended, 43 P.S. §§753(x) and 753(1)(2)(B).

Claimant performed research for the National Center for Juvenile Justice (NCJJ) from the summer of 1977 through August, 1979. The NCJJ is the research division of the National Council of Juvenile and Family Court Judges, a private, non-profit corporation. Claimant spent the first nine months of this period as a contract employee developing a research methodology aimed toward obtaining a grant to fund a proposed project relative to court adjudicated juvenile delinquents. Claimant was compensated at a per diem rate of $100 during this nine month period. An $87,000 grant was ultimately obtained from the Buhl Foundation. Claimant's compensation under the grant was increased to $130 per day beginning June 1, 1978 and ending August 31, 1979. Claimant applied for unemployment compensation benefits on August 26, 1979. His application was denied by the Bureau (now Office) of Employment Security based on the conclusion that the grant monies did not constitute "wages" as defined by Section 4(x) of the Law. Claimant appealed this determination and after two hearings the referee affirmed based on Sections 4 (x) and 4(1)(2)(B) of the Law. Upon appeal to the Board, the Claimant sought a

remand for further hearing on the "employment" issue raised by Section 4(1)(2)(B). This request was denied and the Board affirmed the referee's decision.

In his appeal to this Court, Claimant raises three issues: 1) did the remuneration paid to Claimant constitute "wages" as defined by the Law; 2) did the services rendered by Claimant constitute "employment" as defined by the Law; and 3) was Claimant denied due process of law when he was denied the opportunity to address the "employment" issue before the referee and the Board? In addition, the Board now requests a remand for further testimony and findings on the "employment" issue. For the reasons which follow, we conclude that we must remand to the Board.

Section 4(x) of the Law defines "wages", in pertinent part, as follows:

'Wages' means all remuneration, . . . paid by an employer to an individual *with respect to his employment.* . . . (Emphasis added.)

In order to determine whether the remuneration paid to Claimant constituted "wages",[1] the referee applied the fact findings to the Law's definition of "employment." That definition, which appears at Section 4(1), reads in pertinent part as follows:

(2) The term 'Employment' shall include an individual's entire service performed with-

---

[1] The issue of what constitutes wages in the instant case is clearly not controlled by *Sharvy v. Unemployment Compensation Board of Review*, 42 Pa. Commonwealth Ct. 553, 400 A.2d 1387 (1979) as the Board argues. In *Sharvy* the issue of whether a fellowship grant paid by the National Endowment for the Humanities constituted wages under Section 4(x) was resolved by information supplied by the federal government that the grant was not wages. The Office was bound by that information and thus did not independently resolve the issue.

in or both within and without this Commonwealth, if—

. . . .

[B] Services performed by an individual for wages shall be deemed to be employment subject to this act, unless and until it is shown to the satisfaction of the department that— (a) such individual has been and will continue to be free from control or direction over the performance of such services both under his contract of service and in fact; and (b) as to such services such individual is customarily engaged in an independently established trade, occupation, profession or business.

It is now well settled that in applying the "employment" definition *both* elements of Section 4(1)(2)(B) must be established by the employer. *Crenshaw v. Unemployment Compensation Board of Review*, 50 Pa. Commonwealth Ct. 136, 412 A.2d 682 (1980). Unfortunately, the referee here applied only the first element. Since no evidence was adduced on the second issue, to wit, whether the Claimant is customarily engaged in an independent profession, it is necessary for us to remand for hearing on that issue. *O'Brien v. Unemployment Compensation Board of Review*, 29 Pa. Commonwealth Ct. 272, 370 A.2d 805 (1977).

With respect to the first element of Section 4(1)(2)(B), the issue of employer control, the referee made the following pertinent findings of fact:

6. When the funding was received, the Center director asked the claimant if he was interested in becoming a permanent employee of the Center. It was explained there was a $130 per day available but if he became a Center employee, the $130 would be reduced by the amount of money required to pay for fringe benefits

of regular employees. Claimant chose to received the $130 per day because he was interested in accumulating funds to complete his book.

7. Claimant was not required to work specific hours, was not required to work in the office of the National Center for Juvenile Justice although he could work there if he wished, was not required to attend staff meetings or participate in discussions with the staff or the Center director.

8. The staff and the director were available to discuss his ideas and share whatever knowledge they had with the claimant if he wished to avail himself of such opportunities.

9. The only interest the Center had in claimant's work was to be assured he was performing said work in accordance with the methods and design he had outlined in his proposal.

. . . .

12. The Buhl Foundation gave the grant of $87,000 to the National Council of Juvenile and Family Court Judges who dispensed the grant to the National Center for Juvenile Justice. Claimant was paid from this grant every two weeks (at his request) by a check signed by the Center director. No deductions were made from the claimant's checks.

13. Regular employees of the National Center for Juvenile Justice are paid by payroll checks from the National Council of Juvenile and Family Court Judges on a monthly basis and are covered with a number of fringe benefits. Claimant was not covered with any fringe benefits.

Although these findings, taken as a whole, might support the conclusion that NCJJ did not exercise

the requisite degree of control over Claimant, *see Pavalonis v. Unemployment Compensation Board of Review*, 57 Pa. Commonwealth Ct. 289, 426 A.2d 215 (1981), *but see Crenshaw*, we conclude that this issue must also be considered upon remand.

The hearings in the instant case were bifurcated due to the inability of NCJJ's representative to attend the scheduled hearing in York on November 20, 1979. As a result, only Claimant's evidence was heard at the first hearing. A second hearing was held in Pittsburgh on February 11, 1980 to take evidence presented by NCJJ. A remand is necessary due to the referee's statement at the first hearing, at which only Claimant was present, that, "The only issue that appears to be before us in this proceeding has to do with whether the monies that were paid to you were wages within the meaning of Section 4(x)." Having thus limited the issue, the matter of control under Section 4(1)(2)(B) was never directly addressed at the Claimant's hearing. At the second hearing, however, at which only NCJJ was present, the referee requested testimony on the issue of control. We believe that fundamental fairness requires that, upon remand, Claimant be permitted to address the control issue.[2] *See Unemployment Compensation*

---

[2] We note that if Claimant's services are found, upon remand, not to constitute "employment" a corollary would be that Claimant was "self-employed." He would, accordingly, be rendered ineligible for benefits under Section 402(h) of the Law, 43 P.S. §802(h). While it would also be true that Claimant's remuneration would not constitute "wages" under Section 4(x), we suggest that, upon remand, it would be helpful to view whether or not Claimant is "self-employed" as the crucial issue in this case. This is the usual approach when eligibility for compensation hinges on the existence of "employment" as defined by Section 4(1)(2)(B). *See, e.g., Pavalonis; Crenshaw; Jochynek v. Unemployment Compensation Board of Review*, 32 Pa. Commonwealth Ct. 86, 378 A.2d 490 (1977).

*Board of Review v. Hoffer,* 25 Pa. Commonwealth Ct. 240, 360 A.2d 796 (1976).

We, accordingly, remand for further proceedings consistent with the foregoing opinion.

ORDER

AND Now, this 15th day of July, 1981, the record in the above-captioned matter is remanded to the Unemployment Compensation Board of Review for further proceedings consistent with the foregoing opinion.